UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gemini Investors III, L.P.; and
Gemini Investors IV, L.P.,

        Plaintiffs,

v.

RSG, Inc.; R Group, Inc.; and
Randall S. Golden,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5264 ADM/JJG

_____

Margo S. Brownell, Esq., and Keiko L. Sugisaka, Esq., Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN, on behalf of Plaintiffs.

W. Patrick Betterman, Esq., Law Offices of W. Patrick Betterman, Omaha, NE; and Damien A. Riehl, Esq., and Matthew L. Woods, Esq., Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On February 20, 2009, the undersigned United States District Judge heard oral argument on Defendants RSG, Inc. ("RSG"); R Group, Inc. ("R Group"); and Randall S. Golden's ("Golden") (collectively "Defendants") Motion to Dismiss or, Alternatively, to Transfer Venue [Docket No. 11]. For the reasons set forth below, Defendants' Motion to transfer is granted.

## II. BACKGROUND

Plaintiffs are Delaware companies that maintain offices in Minnesota. Compl. [Docket No. 1] ¶¶ 2-3. RSG is a South Dakota corporation, R Group is an Iowa corporation with a place of business in South Dakota, and Golden (an officer and director of RSG and R Group) is a resident of South Dakota. Id. ¶¶ 5-7.

Defendants operated a business that designed, manufactured, distributed, and sold dump

trailers, accessories, and related parts.  Id. ¶ 12.  The business focused primarily on one trailer, the "Sidump'r Trailer," a "bidirectional dump trailer" that dumps from the side.  Id.  In 2004 or 2005, Golden hired an investment banker to market Defendants' business to potential buyers.  Id.  In approximately August 2005, Plaintiffs learned about Defendants' business and expressed interest in acquiring it.  Id.  Over the next several months, Defendants made numerous representations regarding the business and the Sidump'r Trailers to Plaintiffs' Minnesota employees during a telephone call and several in-person meetings in Nebraska.  Id. ¶¶ 13-22.  Plaintiffs' two Minnesota employees were involved in the due diligence into the purchase of Defendants' business, and they spoke with Defendants over the telephone and made several visits to Nebraska for in-person meetings with Defendants.  Id. ¶ 23-25.  Also, Plaintiffs hired a Minnesota company to assist in conducting the due diligence into Defendants' business.  Id. ¶ 26.

In December 2005, Sidump'r Trailer Company, Inc. ("STC") was incorporated in Delaware to purchase Defendants' business.  Brownell Decl. [Docket No. 21], Ex. A at 1.  Shortly thereafter, Sidump'r Holdings, Inc. ("Holdings") was incorporated in Delaware to be the holding company for STC, and in January 2006, Plaintiffs invested approximately $4.75 million in Holdings to finance the purchase of Defendants' business.[1]  Id., Ex. A at 2; Compl. ¶ 28.  An asset purchase agreement was signed on January 10, 2006.  Betterman Decl., Ex. 1 ("Nebraska Compl.") ¶ 5.  Sometime thereafter, Plaintiffs guaranteed another approximately $1.2 million on a revolving line of credit.  Compl. ¶ 28.  Plaintiffs allege that after the closing on the purchase of

---

[1] Plaintiffs own 80.5% of the outstanding and issued common stock in Holdings. Betterman Decl. [Docket No. 17] ¶ 4.

Defendants' business, they learned that Defendants' various representations during the negotiations and due diligence were false or misleading or omitted material facts. Id. 38-39, 44; Betterman Decl., Ex. 2 [Docket No. 19] ("Nebraska Answer") Counterclaim ¶¶ 20-24.

On July 24, 2006, Defendants filed suit against STC in the United States District Court for the District of Nebraska. Betterman Decl. ¶ 3. In the amended complaint in the Nebraska action, Defendants seek damages for breach of contract, as well as a declaratory judgment that STC has no claims against Defendants arising out of the sale of the business for indemnification or breach of a noncompete agreement. Nebraska Compl. ¶¶ 10-34. STC asserted numerous counterclaims in response, including fraudulent misrepresentation, fraudulent concealment, fraudulent nondisclosure, and negligent misrepresentation in connection with the purchase of Defendants' business. Nebraska Answer, Counterclaim ¶¶ 39-63. On September 24, 2008, Plaintiffs filed this action claiming that Defendants made fraudulent and negligent misrepresentations regarding the business and the Sidump'r Trailers and that those misrepresentations induced Plaintiffs to invest in Holdings to fund STC's purchase of the business.

### III. DISCUSSION

Defendants seek transfer of venue pursuant to 28 U.S.C § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] In deciding whether to grant a motion to transfer, a district court employs a three-factor balancing

---

[2] The parties do not dispute the threshold question of whether Nebraska is a venue in which the action could have originally been brought.

test that considers "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). These factors are not exclusive, and a district court's decision on a motion to transfer "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id.

As an initial matter, Plaintiffs emphasize that there is a strong presumption in favor of a plaintiff's choice of forum, and, accordingly, a defendant bears a heavy burden of overcoming this presumption by showing that the balance of factors strongly favors transfer. See In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1992) (holding that a plaintiff's choice of forum is generally given presumptive weight) (overruled on other grounds). However, when the plaintiff is not a resident of the selected forum or when the underlying events giving rise to the litigation did not occur in the forum, courts afford a plaintiff's choice of forum "significantly less deference." Nelson v. Soo Line R.R. Co., 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (citations omitted). In maintaining that their choice of Minnesota as a forum is entitled to presumptive weight, Plaintiffs repeatedly insist that they are Minnesota residents; they are not. Courts have held that for purposes of venue, a corporate plaintiff is a resident only in the state in which it is incorporated and the mere fact that it is "'doing business'" in a state does not render the corporate plaintiff a resident of that state. See Rosenfeld v. S.F.C. Corp., 702 F.2d 282, 283 (1st Cir. 1983) (collecting cases). Other courts are of the view that a "a corporate plaintiff generally is deemed to reside at its principal place of business." 17 James Wm. Moore et al., Moore's Federal Practice § 111.13[1][c][i] (3d ed. 2008) (citing Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F. Supp. 759, 764 (D. Del. 1991)). Under either view, Plaintiffs are not

Minnesota residents for purposes of determining the deference afforded to their choice of forum because they are incorporated in Delaware and their principal places of business are in Massachusetts, not Minnesota.  Betterman Decl. ¶ 8.

Nor did the underlying events that gave rise to this litigation occur in Minnesota.  Rather the underlying events—the alleged misrepresentations regarding the business and the Sidump'r Trailers—occurred during a Septebmer 28, 2005 telephone call; during three meetings at STC's principal place of business in Plainview, Nebraska (where the manufacturing plant and executive offices are located); and in certain promotional material and historical financial statements.  Compl. ¶¶ 13-22; Betterman Decl. ¶ 7.  Plaintiffs contend, however, that Minnesota is the location where the underlying events occurred because (1) the September 28, 2005 telephone call was received by Plaintiffs' employees located in Minnesota and (2) Plaintiffs' reliance on the alleged misrepresentations and omissions took place in Minnesota.  When misrepresentations are the underlying events of a litigation, courts generally look to the place where the misrepresentations were made, not the place where they were received or relied upon, to determine where the underlying events occurred.  See, e.g., In re Collins & Aikman Sec. Litig., 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) (holding that in determining where events occurred for purposes of a motion to transfer venue, "misrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received.") (quotation omitted); see also Lyon Fin. Servs., Inc. v. Dutt, Civ. No. 08-4735, 2008 WL 5104686, at *3 (D. Minn. Nov. 25, 2008); Clayton v. Heartland Res., Inc., No. 3:08-cv-0513, 2008 WL 2697430, at *6 (M.D. Tenn. June 30, 2008); Vanguard Fin. Serv. Corp. v. Johnson, 736 F. Supp. 832, 839-40 (N.D. Ill. 1990).

Because Plaintiffs do not reside in Minnesota and because the underlying events that gave rise to this litigation did not occur in Minnesota, the Court concludes that Plaintiffs' choice of Minnesota as a forum is entitled to less deference.

### A.     Convenience of the Parties

In assessing the relative convenience of the parties, "[t]he logical starting point . . . is a consideration of [the parties] residences in relation to the district court chosen by the plaintiff and the proposed transferee district." Facilitec Corp. v. Omni Containment Sys., LLC, No. Civ. 03-3187, 2003 WL 21781914, at *1 (D. Minn. July 31, 2003) (quotation omitted).  None of the parties "reside" in Minnesota.  There is little difference in convenience for Plaintiffs, as residents of Delaware and Massachusetts, to litigating in Nebraska or Minnesota.  Likewise, as residents of South Dakota and Iowa, it is equally convenient for Defendants to litigate in either Minnesota or Nebraska.  This does not appear to be a situation in which the request for transfer is a transparent attempt to shift the inconvenience of litigating to the party resisting transfer.  Rather, Defendants' request is grounded in the fact that Nebraska is "the operative location in the action"—where the bulk of the witnesses and documents are located and where the alleged misrepresentations that are at the center of this litigation were made.  Defs.' Mem. in Supp. of Mot. to Dismiss or Transfer [Docket No. 16] at 29.  Ultimately, the convenience of the parties appears to be a neutral factor.

### B.     Convenience of the Witnesses

Defendants argue that the convenience of the witnesses favors transfer to Nebraska. Defendants aver that the 30 individuals who have been identified as likely witnesses in the Nebraska action will likewise be the witnesses in this action and that thirteen of them are

Nebraska residents, while only two or three are Minnesota residents.  See Betterman Decl. ¶ 6. Plaintiffs respond that the Nebraska action involves claims and issues that are not relevant to this action and that Defendants have failed to show that the 30 witnesses in the Nebraska action will have testimony that relates not to those claims and issues but to the claims and issues that are also the subject of this action.

Although certain aspects of the Nebraska action are not present in this action (for example, claims for securities violations and breach of a non-compete agreement), it would be disingenuous to suggest that the core of the Nebraska action is materially different from this action.  This case centers on whether Plaintiffs were induced to invest in Holdings, which in turn funded STC's purchase of Defendants' business, by numerous misrepresentations and omissions regarding Defendants' business and the Sidump'r Trailers.  One of the central issues (if not *the* central issue) raised by the counterclaims in the Nebraska action is whether STC was induced to purchase Defendants' business by the very same misrepresentations and omissions.  Compare Compl. ¶¶ 12-22, 29-36 with Nebraska Answer, Counterclaim ¶¶ 10-14, 20-24, 26, 28.  Indeed, many of the allegations in the Complaint in this action are essentially identical to the allegations that form the basis of the counterclaims in the Nebraska action.  Defendants have asserted that the witnesses identified in the Nebraska action will be witnesses in this action and that their testimony will be relevant to the allegations of fraudulent and negligent misrepresentations and omissions.  And while Plaintiffs contend that Defendants have failed to sufficiently establish that the witnesses in the Nebraska action have testimony also relevant to the claims in this action, Plaintiffs have not stated that the testimony of the witnesses identified in the Nebraska action is not relevant to this action.

For their own part, Plaintiffs claim that they have not yet determined all of the witnesses they will call in this case but that they will certainly call three witnesses who reside in Minnesota—namely, the two employees who worked in the Minnesota offices and a designee from the Minnesota firm that assisted with due diligence.  The alleged misrepresentations that form the basis of the claims in this action are also the basis for the fraudulent and negligent misrepresentation counterclaims in the Nebraska action.  Discovery in the Nebraska action has been ongoing since September 2006, and the parties have identified the witnesses they anticipate will testify.  See RSG, Inc., et al. v. Sidump'r Trailer Company, Inc., No. 8:06cv507 (D. Neb.), docket entry nos. 135, 136, 139.  Presumably, the witnesses identified in the Nebraska action include witnesses whose testimony will be necessary to establish the allegations that Defendants misrepresented the business and the quality of the Sidump'r Trailers.  Thus, it is unclear why Plaintiffs have yet to determine the witnesses they will need to call in this action to establish the very same allegations of misrepresentations.[3]  Furthermore, one of the employees who worked in the Minnesota offices currently resides in Michigan, rather than Minnesota.  Betterman Decl. ¶ 6.

In evaluating the convenience of the witnesses, the "sheer number of witnesses will not decide which way the convenience factor tips."  Terra, 119 F.3d at 696 (quotation omitted).  Nevertheless, the information that the parties have presented tends to show that more witnesses

---

[3] A comparison of the Complaint in this action and the answer in the Nebraska action reveals no difference in the allegations of which individuals made the misrepresentations and which individuals received the misrepresentations.  Thus, proving the misrepresentations in each action would appear to require the same witnesses, although proving Plaintiffs' damages in this action might require different witnesses than would be required to prove STC's damages in the Nebraska action.

8

reside in Nebraska than in Minnesota. Mindful of the preference for live testimony, Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999), the Court finds that the convenience of the witnesses weighs moderately in favor of transfer.

## C.    Interests of Justice

When evaluating whether the interests of justice warrant transfer, courts typically consider such factors as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) advantages of having a local court determine questions of local law." Terra, 119 F.3d at 696.

Defendants contend that because the Nebraska action involves the same allegations of misrepresentations with regard to the business and the quality of the Sidump'r trailers, transfer to allow the Nebraska court to hear both cases would further judicial economy and would avoid inconsistent results. The Supreme Court has commented:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960). Courts have thus granted transfers to districts where related actions are already pending to permit cases to be consolidated into one proceeding. See Durabla Mfg. Co. v. Cont'l Cas. Co., No. 98-1596, 1998 WL 957250, at *5 (D. Minn. Oct. 26, 1998) (collecting cases); see also Pall Corp. v. PTI Technologies, Inc., 992 F. Supp. 196, 201 (E.D.N.Y. 1998) ("It is well established that '[t]ransfer is particularly appropriate where there is a prior lawsuit pending in the transferee district involving the same facts,

9

transactions, or occurrences.") (alteration in original) (quoting Levitt v. State of Maryland Deposit Ins. Fund Corp., 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986)). As discussed previously, Plaintiffs' claims in this action are dependent on proving the same misrepresentations and omissions as those that have been alleged in the Nebraska action. The Court therefore agrees that judicial resources would be wasted and that there would be a potential for inconsistent results if the two actions were to proceed in different courts.[4]

Several other considerations typically relevant to the interests of justice do not inform the analysis any further. As previously explained, Plaintiffs' choice of forum is entitled to significantly less deference in this case. The comparative costs to the parties of litigating in each forum appears to be neutral, and the parties do not contend that there would be any difficulty in enforcing a judgment in either forum or that there are any conflict of law issues. In addition, regardless of which state's laws end up governing the claims, "courts can just as easily apply the law of another state as easily as their own." Clergy Fin., LLC v. Clergy Fin. Servs., Inc., ___ F. Supp. 2d ___, 2009 WL 397443, at *6 (D. Minn. 2009) (quotation omitted).

Plaintiffs raise two final points. First, Plaintiffs contend that the interests of justice do not favor transfer because "Minnesota has an interest in providing a forum for its residents to adjudicate its residents' claims." Pls.' Mem. in Opp'n to Mot. to Dismiss [Docket No. 20] at 35. However, as previously explained, Plaintiffs are not Minnesota residents. Neither are Defendants for that matter. Second, Plaintiffs contend that transferring this action is inappropriate because the Nebraska action has been ongoing since July 2006, the deadline for

---

[4] This is not to say that after transfer, this action will necessarily be consolidated with the Nebraska action. Rather, that is a determination to be made by the Nebraska court.

10

expert reports and pretrial disclosures has passed, discovery recently closed, pretrial submissions soon will be due, and trial is set to begin on June 15, 2009. Id. at 37-38. But Plaintiffs argument assumes that this action will be consolidated with the Nebraska action, which is a question that will not be decided until after the transfer. Also, as Defendants persuasively argue, Plaintiffs have been well-aware of the Nebraska action since its inception in July 2006 and yet waited until September 2008 to file this action. Thus, the Court finds hollow the argument that the Nebraska action is too far progressed to warrant transfer.

The interests of justice is often viewed as the most important factor. See Nelson v. Master Lease Corp., 759 F. Supp. 1397, 1402 (D. Minn. 1991). This case is no different. While the convenience of the parties is neutral and the convenience of the witnesses weighs only moderately in favor of transfer, the interests of justice—most importantly, judicial economy and the concern for avoiding potentially inconsistent results—strongly favors transferring this action to the District of Nebraska. The Nebraska court is well positioned to decide whether to consolidate this action with the pending action that involves some of the same core issues regarding the alleged misrepresentations. The Court finds that Defendants have carried their burden of showing that transfer to the District of Nebraska is warranted. In light of this decision, the Court declines to rule on Defendants' Motion for dismissal.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss or, Alternatively, to Transfer Venue [Docket No. 11] is **GRANTED** as to transfer of venue; and

    2.  Venue shall be transferred to the United States District Court for the District of Nebraska.

                                             BY THE COURT:

                                                s/Ann D. Montgomery
                                            ANN D. MONTGOMERY
                                            U.S. DISTRICT JUDGE

Dated:  March 20, 2009.